# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

JOHN DOE,

              Plaintiff,

    v.

ALEJANDRO MAYORKAS, ANTONY
J. BLINKEN, and UR JADDOU,

              Defendants.

CIVIL ACTION NO.:

**JURY TRIAL DEMAND**

## COMPLAINT

Plaintiff ▮▮▮▮▮▮ ("Plaintiff" or ▮▮) by and through his undersigned

counsel, states the following as his complaint against Defendants Alejandro Mayorkas,

Antony J. Blinken, and Ur Jaddou, in their official capacities:

## NATURE OF THE ACTION

1.    This lawsuit seeks to address the government's wrongful denial of

humanitarian parole applications filed on behalf of Afghan nationals who remain at

imminent risk of violence and death from the Taliban following the United States'

withdrawal from Afghanistan.[1]

---

[1] Plaintiff files this Complaint with a pseudonym to protect the life and safety of Plaintiff and Plaintiff's family members, as the allegations below illustrate. Plaintiff has contemporaneously filed a motion to file the Complaint under a pseudonym and to seal portions of the Complaint. Attached hereto as Exhibit 1, for Defendants' reference, is a complete list of the individuals whose humanitarian parole applications are at issue.

2.      As further background, Plaintiff is an Afghan national ██████████

███████████████████████████████████████████

3.      In 2021, Plaintiff filed applications with the United States Citizenship and

Immigration Services ("USCIS") seeking humanitarian parole for his family members

who either served, or had close family members who served, the United States in

Afghanistan or the prior U.S.-backed Afghan government. Plaintiff's family members

include, among others: ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████ Following

the departure of U.S. and NATO forces from Afghanistan, and the subsequent collapse of

the Afghan government, the Taliban's threats became even more dire and imminent for

Plaintiff's family.

4.      For example, the Taliban is extremely hostile to anyone who helped the

United States during the war in Afghanistan, and specifically searches for individuals

who supported the U.S. and former Afghan governments and their initiatives in Afghanistan. Indeed, on information and belief, the Taliban has, among other actions, publicly: (i) threatened and carried out attacks specifically against such individuals; (ii) announced a "fitwa" calling for the execution of all previous security forces; and (iii) declared individuals with any affiliation with the U.S. or other foreigners "unIslamic" and enemies of the Taliban. The Taliban has also resumed persecuting women and girls, posing additional risks of gender-based and sexual violence under the current Taliban regime. Moreover, Afghanistan is fertile ground for other terrorist groups that the Taliban is either unable or unwilling to control. Many of these groups, like ISIS, harbor similar anti-American views and are willing to attack anyone that they perceive to have aligned with U.S. forces. To be sure, the New York Times' Opinion Video team recently reported the results of a seven-month investigation revealing a "campaign of revenge killings against former U.S. allies" by the Taliban.[2] The report also confirmed the startling statistic that "nearly 500 former government officials and members of the Afghan security forces were killed or forcibly disappeared during the Taliban's first six months in power."[3]

---

[2] *See* Barbara Marcolini, Sanjar Sohail & Alexander Stockton, *The Taliban Promised Them Amnesty. Then They Executed Them.*, N.Y. TIMES (Apr. 12, 2022), https://www.nytimes.com/interactive/2022/04/12/opinion/taliban-afghanistan-revenge.html.

[3] *Id.*

5.     Plaintiff's family members, like Plaintiff, are also Shi'a Muslims and members of the minority Hazara ethnicity. The Taliban historically persecuted these populations, and they are now again primary targets under the Taliban's current regime.[4] Indeed, in August 2021, the United States Holocaust Memorial Museum published a statement expressing concern "about ethnic and religious minorities, specifically the Shi'a minority who belong predominantly to the Hazara ethnic group, which faces a risk of crimes against humanity or even genocide."[5]

6.     

---

[4] *See* Ewelina U. Ochab, *Hazaras Targeted in Afghanistan Yet Again*, FORBES (Apr. 20, 2022, 5:17 PM), https://www.forbes.com/sites/ewelinaochab/2022/04/20/hazaras-targeted-in-afghanistan-yet-again/?sh=24128ca4691c ("Hazaras are considered to be the most discriminated minority group in Afghanistan and have been subjected to persecution for centuries."); *Afghanistan: Taliban Forcibly Evict Minority Shia*, Human Rights Watch (Oct. 22, 2021, 8:00 AM), https://www.hrw.org/news/2021/10/22/afghanistan-taliban-forcibly-evict-minority-shia.

[5] *Museum Statement on the Hazara*, U.S. Holocaust Mem'l Museum (Aug. 23, 2021), https://www.ushmm.org/information/press/press-releases/museum-statement-on-the-hazara.

███████████████████████████████████████████████

████████████████████████████

7.      In short, as set forth above and in further detail herein, Plaintiff's family members' facts and circumstances compel an expeditious granting of humanitarian parole. Indeed, humanitarian parole is supposed to allow persons into the United States for "urgent humanitarian reasons or significant public benefit."[6]

8.      Notwithstanding that clear standard, USCIS denied all of Plaintiff's requests for humanitarian parole via ████████ identical, form letters sent in May and June 2022 (*i.e.*, long after USCIS's published usual processing time of 90 days). The letters provided that USCIS "generally offers parole based primarily on protection needs only when USCIS finds that the beneficiary is at imminent risk of serious targeted or individualized harm" but then generically concluded, without any individualized analysis or detail, that "USCIS did not find sufficient evidence . . . to establish urgent humanitarian or significant public benefit reasons for parole and that the beneficiary merits a discretionary approval for parole."

9.      Unfortunately, USCIS's belated, form denials for Plaintiff's family members are consistent with USCIS's ubiquitous failure to appropriately administer the humanitarian parole program for Afghan applicants. For example, despite publishing a webpage specifically dedicated to "Information for Afghan Nationals on Parole Into the United States," accepting nearly 50,000 applications from Afghans, and accepting

---

[6] 8 U.S.C. § 1182(d)(5)(A).

5

millions of dollars in processing fees, USCIS had processed *fewer than 5,000*

applications and *had denied over 90% of the applications actually processed*, as reported

in June 2022.[7] As of June 2022, USCIS had only approved about 297 applicants (out of

the tens of thousands of at-risk Afghans that have applied for humanitarian parole).[8]

10.    USCIS's generic denials of Plaintiff's family members' applications are

consistent with these staggering (albeit unfortunate) statistics and reflect USCIS's failure

to, among other things, properly process meritorious applications and provide

individualized analyses or adjudication of pending humanitarian parole applications. For

these and the many other reasons detailed herein, USCIS's actions therefore violate the

Administrative Procedure Act ("APA"), Plaintiff's due process rights, and USCIS's own

internal operating procedures for humanitarian parole requests. This lawsuit seeks to

correct those wrongs and obtain a proper adjudication of Plaintiff's family members'

applications.

**PARTIES**

11.    Plaintiff ███████████ ("Plaintiff" or ██████) is an Afghan national who ██████

 obtained lawful permanent residence in

the United States. Plaintiff became eligible for U.S. citizenship ███████████████████

---

[7] *See* Camilo Montoya-Galvez, *U.S. is Rejecting Over 90% of Afghans Seeking to Enter the Country on Humanitarian Grounds*, CBS NEWS, https://www.cbsnews.com/news/afghan-refugees-rejected-us-entry-humanitarian-grounds/ (last updated June 20, 2022, 12:59 PM).

[8] *Id.*

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████

12.     On information and belief, Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security, which oversees USCIS. He is sued in his official capacity only.

13.     On information and belief, Defendant Antony J. Blinken is Secretary of the U.S. Department of State, which plays a role in screening and issuing travel documents to those granted humanitarian parole by USCIS. He is sued in his official capacity only.

14.     On information and belief, Defendant Ur Jaddou is the Director of USCIS. She is sued in her official capacity only.

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. The Administrative Procedure Act also provides the Court with the authority to issue the requested relief.[9]

16.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because █████████████████████████████████████████████████ Defendants are all officers or employees of the United States who are being sued in their official capacities.

---

[9] 5 U.S.C. §§ 702, 706.

## FACTUAL ALLEGATIONS

17.     The United States and its allies toppled the ruling Taliban regime in late 2001. The following war in Afghanistan was one of the longest wars in American history, spanning from 2001 to August 2021.

18.     The war effort depended not only on the military forces of the United States and its allies, but also on assistance from Afghans themselves. Various Afghans therefore provided services ranging from military combat to a variety of other jobs assisting allied forces. Many such individuals worked for Afghan or American companies that contracted with the United States to provide services that aided coalition forces. In addition, during the twenty years from 2001 until the Taliban's recent rise back to power in 2021, the U.S. and former Afghan governments made progress to restore democracy and civil freedoms, including for women in Afghanistan.

19.     Plaintiff, ███ is part of a family with known connections to the United States and the Afghan Army, ███████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████

20.     Plaintiff's family members' known and longstanding connections to the United States, and support for the U.S. efforts in Afghanistan, also include the following:

████████████████████████████ ████████████████████████████████



21.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

22.   Plaintiff's and his family's support of the U.S. and Afghan Army came at immense personal risk, as Taliban insurgents roamed the countryside and were hostile to anyone seen as aiding the U.S. and Afghan forces, or otherwise supporting U.S. initiatives. ████████████████████████████████████████

████████████████████

23.   Moreover, under the Taliban's philosophy, all family members can be killed if only one member of a family unit is considered a threat or a traitor. Thus, each of Plaintiff's individual family members is at risk due to only some of their family members' connections with the U.S. government and former Afghan government and army.

24.   Plaintiff's family members are also at risk due to their ethnic and religious affiliations. Specifically, and as stated, Plaintiff's family members identify as Shi'a Muslims and belong to the Hazara ethnic minority, populations that the Taliban has historically targeted for persecution.

25.   █████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

26.    As evident by ████████████████████████████████████

the known familial connections █████████████████████████ and general

support of U.S.-affiliated initiatives, Plaintiff's family members are at imminent risk of

persecution. ████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

**A.    The United States Government Invites Afghan Nationals To Apply For Humanitarian Parole**

27.    Following the U.S. withdrawal from Afghanistan, the U.S. government

immediately recognized the need to protect Afghan nationals, particularly those who

supported and assisted the former Afghan government and U.S. forces, and explicitly

recognized humanitarian parole as one such avenue.

28.    Thus, on or around August 2, 2021, the U.S. Department of State

announced a U.S. Refugee Admissions Program Priority 2 designation granting U.S.

Refugee Admissions Program access for certain Afghan nationals and their eligible

family members. The announcement provided that "in light of increased levels of Taliban violence, the U.S. government is working to provide certain Afghans, including those who worked with the United States, the opportunity for refugee resettlement to the United States."[10]

29.     On or around August 29, 2021, President Biden also directed the U.S. Department of Homeland Security to lead a coordinated effort, known as Operation Allies Welcome, "to support vulnerable Afghans, including those who worked alongside us in Afghanistan for the past two decades."[11] Defendant Jaddou, at the 2021 National Immigrant Integration Conference, similarly referred to Operation Allies Welcome and represented that "USCIS is committed to efficiently and humanely resettling *tens of thousands of Afghans and their families* who served honorably alongside American forces."[12]

30.     The Operation Allies Welcome webpage provides an overview of the "operational phases" of different avenues for entry into the United States, noting that

---

[10] *See U.S. Refugee Admissions Program Priority 2 Designation for Afghan Nationals*, Off. of the Spokesperson, U.S. Dep't of State (Aug. 2, 2021), https://www.state.gov/u-s-refugee-admissions-program-priority-2-designation-for-afghan-nationals/.

[11] *See Operation Allies Welcome*, U.S. Dep't of Homeland Sec., https://www.dhs.gov/allieswelcome (last updated Sep. 29, 2022).

[12] *See* Ur M. Jaddou, Dir., USCIS, Remarks Delivered by Dir. Jaddou at the 2021 Nat'l Immigr. Integration Conf. (emphasis added), https://www.uscis.gov/newsroom/speeches-statements-testimony/remarks-delivered-by-director-ur-m-jaddou-at-the-2021-national-immigrant-integration-conference (last updated Oct. 4, 2021).

"most Afghan nationals arriving as part of the evacuation effort will be paroled into the United States on a case-by-case basis, for humanitarian reasons, for a period of two years."[13] In addition to humanitarian parole, the webpage addresses Special Immigrant Visas as well as "referrals to the U.S. Refugee Admissions Program for Afghans who assisted or were associated with the United States in Afghanistan, so that they can be considered for U.S. refugee resettlement from a third country if they have already left or leave Afghanistan."[14]

31.     Moreover, on or around August 26, 2021, USCIS published a webpage specifically dedicated to "Information for Afghan Nationals on Parole Into the United States."[15] The website provided that that "[a]nyone may request parole for themselves, or on behalf of another individual, by filing a Form I-131, Application for Travel Documentation, along with . . . any relevant evidence supporting the parole request."[16] The website also provided that "USCIS may exercise discretion to authorize parole on a case-by-case basis for individuals with urgent humanitarian or significant public benefit reasons to come to the United States for a temporary period."[17]

---

[13] *See Operation Allies Welcome*, U.S. Dep't of Homeland Sec., https://www.dhs.gov/allieswelcome (last updated Sep. 29, 2022).

[14] *Id.*

[15] *See* Information for Afghan Nationals on Parole Into the United States, https://web.archive.org/web/20210827185443/https://www.uscis.gov/humanitarian/humanitarian-parole/information-for-afghan-nationals-on-parole-into-the-united-states.

[16] *Id.*

[17] *Id.*

32.     The webpage recognized that certain individuals may have to leave Afghanistan for purposes of filing an application, providing that "[d]ue to quickly changing circumstances in the region and the closure of the U.S. Embassy in Kabul, beneficiaries . . . may need to arrange travel to a U.S. embassy outside of Afghanistan to continue processing their parole request."[18]

33.     The humanitarian parole program reflected the U.S. government's recognition that many Afghans who assisted or supported the U.S. in Afghanistan were vulnerable and warranted urgent humanitarian aid. As such, beginning in or around July 2021, USCIS reportedly received approximately fifty thousand applications for humanitarian parole for Afghans as of June 2022.

**B.     USCIS Standards Require An Individualized Review For Adjudicating Humanitarian Parole Applications**

34.     USCIS trains its officers to acknowledge that every parole "application is unique and must be evaluated on its own merits, taking into account all the factors unique to the specific parole request."[19] Consistent with that training, USCIS's internal policies require that "[e]ach decision you make must be on a case-by-case basis, taking into account all factors and considering the totality of the circumstances."[20]

---

[18] *Id.*

[19] USCIS International Operations Officer Training, 22 (2017), https://refugeerights.org/wp-content/uploads/imported-files/HP-FOIA-min.pdf [hereinafter IO Training].

[20] *Id.*

35.     USCIS further requires each officer to remain "a neutral, unbiased adjudicator and to give adequate and appropriate consideration to every parole decision . . . ."[21]

36.     USCIS's policies describe a two-step process that officers must use in evaluating humanitarian parole applications. In the first step, the officer determines whether there are urgent humanitarian reasons or a significant public benefit to grant the parole application. If the USCIS officer finds such a reason or public benefit, then the officer moves to the second step which requires the "exercise of discretion, considering the totality of the circumstances" in determining whether to grant an application.[22]

37.     USCIS also publishes guidelines for its officers to follow during each of the two required steps. The guidelines vary based on the type of parole request.

38.     Specifically, and as to the first step, where a request is based on the need for protection from targeted harm (such as Plaintiff's requests here), USCIS officers must determine whether the "beneficiary is at imminent risk of serious harm."[23] USCIS policies then list several factors that "should be considered" in determining whether imminent risk of serious harm exists.[24] These factors include: (1) the living conditions of the beneficiary, including whether the "beneficiary [has] to live under extremely

---

[21] *Id.*

[22] *Id.* at 23-27.

[23] *Id.* at 59.

[24] *Id.*

restrictive conditions" and takes precautionary measures for safety reasons; (2) the

"availability and accessibility of other protection measures;" and (3) "whether the

beneficiary can reasonably relocate or temporarily move to a different part of his or her

home country . . . or temporarily move to a neighboring country."[25]

39.     As to the second step, USCIS policies provide that officers must "exercise

discretion based on articulable, objective, and relevant facts" and that it "is inappropriate

to exercise discretion arbitrarily, inconsistently or based upon speculation."[26] USCIS

policies further direct that officers "should review the record and consider the specific

facts relevant to each case."[27] In the context of specific harm-based parole requests,

USCIS officers must consider at least the following factors: (1) the presence of third-

party evidence of imminent risk of serious harm; (2) country conditions research; and (3)

evidence of the beneficiary's particular vulnerability (if any).[28]

### C.     USCIS Policies Address Circumstances In Which Officers Should Issue Requests for Evidence and Notices of Intent to Deny

40.     USCIS policies also specifically address situations where the USCIS officer

should request additional information before completing the two-step analysis.

Specifically, as of June 9, 2021 (*i.e.*, at the time that USCIS purportedly considered

Plaintiff's applications), USCIS policy provides that "[i]n order to reduce barriers that

---

[25] *Id*. at 59-60.

[26] *Id.* at 25.

[27] *Id.*

[28] *Id.* at 62-63.

may impede access to immigration benefits and ensure the agency is fairly and efficiently adjudicating immigration benefit request, USCIS is returning to the principles of the 2013 policy by issuing [Requests for Evidence ("RFEs")] and [Notices of Intent to Deny ("NOIDs")] when additional evidence *could demonstrate* eligibility for an immigration benefit."[29]

41.     The referenced and operative policy also provides that officers "*should* issue an RFE," rather than a denial, "unless [the officer] determines there is *no possibility* that additional evidence available to the individual might cure the deficiency."[30]

42.     In clarifying the need to issue RFEs and NOIDs, USCIS provided that "[t]his policy will ensure that benefit requestors are given an opportunity to correct innocent mistakes and unintentional omissions[.]"[31]

43.     Accordingly, USCIS's Policy Manual in effect at the time of Plaintiff's applications specifically provided that officers "should issue an RFE or NOID" if the applicant "either has not submitted all of the required initial evidence for the benefit request, or the evidence in the record does not establish eligibility for the benefit

---

[29]  USCIS, PA-2021-11, Request for Evidence and Notices of Intent to Deny (June 9, 2021) [hereinafter 2021 USCIS Policy Alert] (emphasis added), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210609-RFEs%26NOIDs.pdf.

[30]  USCIS, PM-602-0085, Request for Evidence and Notices of Intent to Deny (June 3, 2013) [hereinafter 2013 USCIS Policy Memorandum] (emphasis added), https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2013/June%202013/Requests%20for%20Evidence%20(Final).pdf.

[31]  2021 USCIS Policy Alert, *supra* note 29.

sought."[32] This controlling guidance applies unless "there is *no legal basis* for the benefit request and *no possibility* that additional information or explanation will establish a legal basis for approval."[33]

44.     The USCIS Policy Manual also specifically instructs "careful consideration of all the apparent deficiencies in the evidence" and directs officers to include in the RFE "all the evidence the officer anticipates needing to determine eligibility" in order to avoid the need for multiple RFEs.[34]

45.     The USCIS Policy Manual further provides that it is "appropriate" for officers to issue NOIDs where the applicant "submitted little or no evidence" or "has met the eligibility requirements for the requested benefit or action but has not established that he or she warrants a favorable exercise of discretion."[35] Officers are instructed that NOIDs "should" identify the specific reasons for the intended denial, identify missing evidence as well as examples of other evidence that may be submitted to establish eligibility, and request that evidence.[36]

46.     In short, USCIS policy requires an individualized determination that is specific to each applicant (*i.e.*, a decision that is not form or generic).

---

[32] USCIS Pol'y Manual Vol. 1 Pt. E Ch. 6 § F(3) [hereinafter USCIS Policy Manual], uscis.gov/policy-manual (last visited Dec. 15, 2022).

[33] *Id.* (emphasis added).

[34] *Id.*

[35] *Id*.

[36] *Id.*

**D.** **Plaintiff Files Individual Applications Detailing The Substantial Evidence Justifying Humanitarian Parole For Each Of His Family Members**

47. In September 2021, Plaintiff, through counsel, filed applications for humanitarian parole ██████████████████████████████████████████████ ████████████████ and paid the $575 filing fee for each, for a total of ███████. A list of the beneficiaries, including the Alien Registration Number for each, is annexed hereto as Exhibit 1.

48. The applications described in detail each family member's specific basis to obtain humanitarian parole. The applications also attached substantial documentation from Plaintiff, including his lawful permanent resident card and proof of income and employment. In addition, the applications attached: (i) a letter from United States Congresswoman Kelly Armstrong, District of North Dakota, requesting all due assistance in expediting the safe passage of Plaintiff's family members to the United States ███ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████ (ii) a letter from Plaintiff to Congresswoman Angie Craig requesting assistance in the safe passage of his family members to the United States and detailing the particular risk factors to each of them; (iii) a letter ███████████████████████ to Senator Amy Klobuchar detailing the dangers posed by the Taliban to Plaintiff and his family members and requesting emergency assistance for Plaintiff's family members; and (iv) documentation and photographs substantiating the family members' U.S. and foreign

19

affiliations. Finally, the applications referenced and attached articles from reputable media sources detailing, *inter alia*: (1) the Taliban's searches for people who worked for NATO forces or the former Afghan government, as well as their family members; (2) the Taliban's use of U.S.-built databases as a tool to identify and target Afghans who worked with U.S. forces; and (3) brutal attacks by the Taliban against members of the Hazara ethnic minority.

### E.   USCIS Summarily Denies All Of Plaintiff's Humanitarian Parole Applications Without Requesting Additional Evidence Or Providing Any Individualized Analysis

49.    Plaintiff's applications for humanitarian parole on behalf of his family members included individualized information and credible third-party evidence of serious harm. USCIS therefore had a duty based on, among other things, its own internal policies to evaluate each application on an individual basis and to issue decisions after considering all facts relevant to each individual application, including additional evidence requested and obtained through RFEs or NOIDs.

50.    But USCIS did not fulfill those duties.

51.    Instead, in May and June 2022, through ███████ identical form letters, USCIS denied Plaintiff's request for humanitarian parole for each and every one of his family members. As stated, the denial letters provided that USCIS "generally offers parole based primarily on protection needs only when USCIS finds that the beneficiary is at imminent risk of serious targeted or individualized harm." But the form letters then summarily, and without citing to any individual facts or circumstances, concluded that "USCIS did not find sufficient evidence . . . to establish urgent humanitarian or

significant public benefit reasons for parole and that the beneficiary merits a discretionary approval for parole."

52.     USCIS's denial letters reflect none of the individualized review or careful consideration required by USCIS's own policies and guidelines.

53.     For example, the USCIS denial letters refer to "[e]vidence that the beneficiary is a member of a targeted group, including credible third-party evidence," in a list of examples of relevant evidence. However, none of the denials refers to the fact that each of the applicants is a member of the following targeted groups: (i) Hazara ethnic minority, (ii) Shi'a Muslims; and (iii) supporters of the U.S. and Afghan governments, and that approximately half of the applicants face additional risk of severe persecution and harm because they are also women. Indeed, USCIS recently adjusted its guidelines to explicitly reference "reliable documentation establishing the beneficiary's membership in the targeted group and that the beneficiary is likely to be identified as a member of the targeted group and be at risk of imminent serious harm as a result."[37] This express change underscores the importance of the targeted group membership generically referenced in the denials.

---

[37] *See* Guidance on Evidence for Certain Types of Humanitarian or Significant Public Benefit Parole Requests, USCIS, https://www.uscis.gov/humanitarian/humanitarian-parole/guidance-on-evidence-for-certain-types-of-humanitarian-or-significant-public-benefit-parole-requests (last updated June 23, 2022); *see also* Camilo Montoya-Galvez, *U.S. Expands Eligibility for Afghans and Others Seeking Entry on Humanitarian Grounds*, CBS NEWS (July 1, 2022 8:00 AM), https://www.cbsnews.com/news/immigration-us-expands-eligibility-afghans-others-seeking-entry-humanitarian-grounds/.

54.     Further, USCIS summarily denied Plaintiff's applications without issuing a single RFE or NOID. This plainly violated USCIS's internal policies directing that officers give applicants an opportunity to correct deficiencies through issuance of RFEs and/or NOIDs unless "there is *no legal basis* for the benefit request and *no possibility* that additional information or explanation will establish a legal basis for approval."[38]

55.     Finally, the denial letters themselves were identical for each of the ████ ████ applicants, despite their individual circumstances, and did not set out any specific, non-boilerplate explanation of the basis for denying the relief sought.

56.     Accordingly, USCIS's blanket, generic rejections reflect that USCIS failed to evaluate Plaintiff's applications individually and based on all facts relevant to the specific case.

57.     In short, USCIS ignored and failed to abide by its own policies and directives.

58.     USCIS's failure to follow its own internal policies in adjudicating Plaintiff's applications constitutes an abuse of USCIS's discretion under 8 U.S.C. § 1182(d)(5).

> **F.     Plaintiff Was Substantially Prejudiced by USCIS's Failure to Make an Individualized Determination and Follow Procedural Safeguards**

59.     USCIS's blanket, unexplained denial of Plaintiff's applications for humanitarian parole, and the failure to issue any RFE or NOID in advance of issuing the

---

[38] USCIS Policy Manual, *supra* note 32 (emphasis added).

denials, substantially prejudiced Plaintiff and his family members.

60.    ████████████████████████████████. Although obtaining and supplying documentary evidence in support of the parole requests is difficult, Plaintiff gathered and submitted significant evidence, including credible documentary support, of the imminent danger that his family members face in Afghanistan.

61.    The blanket, form denials issued as to each beneficiary reflect that USCIS did not properly (if at all) consider the individualized evidence collected and submitted in support of each application, thereby prejudicing Plaintiff and his family members.

62.    Moreover, USCIS's failure to issue any RFEs or NOIDs prejudiced Plaintiff and his family members by depriving them of the opportunity to collect and submit additional evidence in support of the applications, including evidence specifically responsive to any such requests, which would assist in the officers' review.

G.    **Comparison to Other Groups Demonstrates the Arbitrariness of the USCIS's Parole Denials For Afghan Citizens**

63.    Comparison to other groups seeking humanitarian parole corroborates that USCIS has failed Afghan citizens in particular in its administration of the humanitarian parole program.

64.    Specifically, publicly available statistics indicate that USCIS has been granting Afghan applications for humanitarian parole at a much lower rate as compared to applicants from other countries.

65.     As explained above, of the nearly 50,000 Afghan humanitarian parole applications reportedly received, USCIS had processed fewer than 5,000 applications and denied over 90% of those processed as of June 2022.[39]

66.     Of the tens of thousands who have applied, USCIS had only approved about 297 Afghans for humanitarian parole as of June 2022.[40]

67.     These sobering statistics are in stark contrast to USCIS's far more efficient and prompt processing (and approval) of humanitarian parole applications from other groups, particularly Ukrainians.

68.     For example, as of May 2022, USCIS reportedly had already granted more than 6,000 Ukrainians entry to the United States through the Uniting for Ukraine program.[41]

69.     Since the start of Russia's invasion of Ukraine, USCIS reportedly had received approximately 29,000 I-134 applications filed on behalf of Ukrainians seeking humanitarian parole as of May 2022.[42]  USCIS reportedly had reviewed over 25,000 of

---

[39] *See* Montoya-Galvez, *supra* note 7.

[40] *Id*.

[41] *See* Letter from Members of Congress to President Biden, Sec'y Mayorkas & Dir. Jaddou (May 26, 2022), https://www.markey.senate.gov/imo/media/doc/oversight_letter_redisparate_treatment_o f_afghan_and_ukrainian_refugees.pdf.

[42] *See AILA Shares Key Takeaways from USCIS Engagement on Uniting for Ukraine*, Am. Immigr. Law. Ass'n (May 10, 2022), https://www.aila.org/advo- media/agency-liaison/aila-national-agency-liaison-meetings/key-takeaways-from-uscis- engagement-on-uniting.

these applications and issued more than 24,000 confirmation notices.[43] More than 17,000 Ukrainians have reportedly been paroled into the U.S. (in addition to 24,000 approved but who have not yet entered), which presents a stark contrast to the 297 Afghans granted humanitarian parole as of June 2022.[44]

70.     There is no logical, non-arbitrary reason for USCIS's treatment of Afghan parole applicants as compared to Ukrainian applicants.

71.     But it reflects unambiguously that USCIS can do much, much better in administering the humanitarian parole program for Afghan citizens. As to Plaintiff and his family members, USCIS's failure to do so violates the law and entitles them to the relief sought herein.

## COUNT I: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT,  5 U.S.C. § 706

72.      Plaintiff hereby incorporates by reference each of the foregoing allegations as if set forth fully herein.

73.     Under the APA, courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[45]

---

[43] *Id.*

[44] *See* Muzaffar Christi & Jessica Bolter, *Welcoming Afghans and Ukrainians to the United States: A Case in Similarities and Contrasts*, MIGRATION POL'Y INST. (July 13, 2022), https://www.migrationpolicy.org/article/afghan-ukrainian-us-arrivals-parole.

[45] 5 U.S.C. § 706(2).

74.    USCIS's rejection of Plaintiff's applications for humanitarian parole as described herein is final agency action and otherwise meets the APA's prerequisites for judicial review.

75.    USCIS's rejection of Plaintiff's applications for humanitarian parole was contrary to the procedures, policies, and practices of USCIS, and was therefore arbitrary, capricious, an abuse of discretion, and should be set aside under the APA.

76.    As a proximate result of these violations of § 706(2) of the APA, Plaintiff and his family members are suffering and will continue to suffer a significant deprivation of their rights. Plaintiff has no plain, adequate or complete remedy at law to address the wrongs described herein. The relief sought by Plaintiff is therefore necessary to prevent continued and future irreparable injury.

## COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS

77.    Plaintiff hereby incorporates by reference each of the foregoing allegations as if set forth fully herein.

78.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."[46]

79.    USCIS is violating procedural due process by failing to evaluate applications for humanitarian parole on an individualized basis as required by USCIS

---

[46] U.S. Const. amend. V.

policies and procedures, and by failing to issue RFEs or NOIDs rather than generically rejecting applications based on a purported lack of evidence.

80.     As a proximate result of these violations of the Due Process Clause, Plaintiff and his family members have suffered and will continue to suffer a significant deprivation of their rights. Plaintiff has no plain, adequate or complete remedy at law to address the wrongs described herein. The relief sought by Plaintiff is necessary to prevent continued and future irreparable injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendants, and requests that the Court grant the following relief:

A.     Issue an order vacating the rejection of Plaintiff's applications for humanitarian parole and remanding for USCIS to reevaluate the applications on an individualized basis in accordance with the law;

B.     Declare that USCIS's summary denial of Plaintiff's request for humanitarian parole absent an individualized, case-by-case assessment is arbitrary, capricious and not in accordance with the law;

C.     Retain jurisdiction during the adjudication or re-adjudication of Plaintiff's humanitarian parole applications to ensure compliance with the Court's orders;

D.     Award Plaintiff's counsel reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

E.      Such other relief as the Court deems just and proper under the

circumstances.

## **DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38, Plaintiff ████

hereby respectfully demands a trial by jury on all issues so triable.

Dated: December 21, 2022                    **FOX ROTHSCHILD LLP**

By:      /s/ Archana Nath
            Archana Nath (#387662)

            Archana Nath
            33 South 6th Street
            Suite 3600
            Minneapolis, MN 55402
            Phone: (612) 607-7000
            Email: anath@foxrothschild.com

**DUANE MORRIS LLP**

            James J. Regan (*pro hac vice* pending)
            Alanna B. Newman (*pro hac vice* pending)
            230 Park Avenue, Suite 1130
            New York, NY  10169-0079
            Tel:  212-404-8735
            Email:  JJRegan@duanemorris.com
                        ABNewman@duanemorris.com

            Elinor H. Murarova (*pro hac vice* pending)
            190 South LaSalle Street, Suite 3700
            Chicago, IL  60603-3433
            Tel:  312-499-6734
            Email:  EHart@duanemorris.com

            *Attorneys for Plaintiff*

141061142