UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>KRISTI L. NOEM, *Secretary of Homeland Security*; MARCO A. RUBIO, *Secretary of State*; and JOSEPH B. EDLOW, *Director, U.S. Citizenship and Immigration Services*,<br><br>Defendants. | Civil No. 22-3142 (JRT/DJF)<br><br>**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS** |

---

Alanna B. Newman and James Regan, **DUANE MORRIS LLP**, 22 Vanderbilt, 335 Madison Avenue, 23rd Floor, New York, NY 10017; Elinor Murarova, **DUANE MORRIS LLP**, 190 South LaSalle Street, Suite 3700, Chicago, IL 60603; and Archana Nath, **FOX ROTHSCHILD LLP**, 33 South Sixth Street, Suite 3600, Minneapolis, MN 55402, for Plaintiff.

David J. Byerley, McKenna Nicole Rackleff, Ruth Ann Mueller, Sergio Sarkany, **UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION**, P.O. Box 868, Ben Franklin Station, Washington, DC 20044; and David W. Fuller, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

Plaintiff John Doe, a United States citizen originally from Afghanistan, alleges that Defendants Kristi Noem, Secretary of Homeland Security, and Joseph Edlow, Director of

the United States Citizenship and Immigration Services ("USCIS"),[1] violated the Administrative Procedure Act ("APA") by denying Plaintiff's twenty-seven parole applications for his family to enter the United States. Plaintiff alleges that USCIS failed to consider each of the parole applications on a case-by-case basis as required by federal statute. Defendants now move for judgment on the pleadings for failure to state a claim and for lack of standing. Because Plaintiff plausibly alleges an APA claim and has standing to assert such claim, the Court will deny Defendants' motion.

## BACKGROUND

### I.     FACTUAL BACKGROUND

During the war in Afghanistan, the United States government relied on the assistance of Afghan nationals. These individuals provided "services ranging from military combat" to "other jobs assisting allied forces," and aided the pursuit of "progress to restore democracy and civil freedoms, including for women in Afghanistan." (Sealed Am. Compl. ("Am. Compl.") ¶¶ 24–25, June 13, 2024, Docket No. 46.) Plaintiff[2] is among those "with known connections to the United States and the Afghan Army." (*Id.* ¶ 26.)

---

[1] Joseph Edlow is now the Director of USCIS. Pursuant to Federal Rule of Civil Procedure Rule 25(d), he is substituted as a Defendant.

[2] Plaintiff has filed this case under a pseudonym. (Sealed Am. Compl. ¶ 1 n.1, June 13, 2024, Docket No. 46.) Though it is typically the Court's practice to use the plaintiff's name in orders, this order uses "Plaintiff" throughout to protect his identity.

Plaintiff became a target of the Taliban movement █████████ ███████████████████████████████████ ████████████████████████████████████████████████ (*Id.* ¶ 28.)  Fearing retribution, Plaintiff fled to the United States, where he was granted ███████████, legal permanent residence in 2022, and full citizenship in 2023.  (*Id.* ¶¶ 18, 32.)

Several members of Plaintiff's family have also been persecuted due to their longstanding connections to and support for the United States' involvement in Afghanistan.[3]  Members of the Taliban ████████████████████████ ████████████████████████████████████████████████ ████████ (*Id.* ¶ 26.)  Plaintiff's family members remain at risk of persecution due to their ethnic and religious affiliations as they identify as Shi'a Muslims and belong to the Hazara ethnic minority, both of which are groups the Taliban has historically targeted.  (*Id.* ¶ 31.)

Plaintiff's family has been unable to escape danger, █████████████████ ██████████ to evade Taliban detection ever since the United States' withdrawal from Afghanistan in 2021.  (*Id.* ¶¶ 2, 32.)  The Taliban has ██████████████████████ ███████████████████████████████████ (*Id.* ¶ 34.)

---

[3] For instance, one of Plaintiff's ████████████████████████████████ ████████████████████████████████████████ (Am. Compl. ¶ 27.)  Another ████████████████████████████████████████████████ (*Id.*) ████████ (*Id.*)

In August 2021, following the United States' withdrawal from Afghanistan, the U.S. Department of State announced a refugee program for certain Afghan nationals and their eligible family members. (*Id.* ¶ 39.) The announcement provided that "in light of increased levels of Taliban violence, the U.S. government is working to provide certain Afghans, including those who worked with the United States, the opportunity for refugee resettlement to the United States." (*Id.*) President Biden also directed the U.S. Department of Homeland Security to lead a coordinated effort, known as Operation Allies Welcome. (*Id.* ¶ 40.) The webpage stated that "most Afghan nationals arriving as part of the evacuation effort will be paroled into the United States on a case-by-case basis, for humanitarian reasons, for a period of two years." (*Id.* ¶ 41.)

USCIS published a similar webpage in August 2021 that announced the parole application, explaining that "USCIS may exercise discretion to authorize parole on a case-by-case basis for individuals with urgent humanitarian or significant public benefit reasons to come to the United States for a temporary period." (*Id.* ¶ 42.) Further, USCIS's internal policies require that officers make decisions "on a case-by-case basis, taking into account all factors and considering the totality of the circumstances." (*Id.* ¶ 45.)

USCIS created a two-step process for evaluating humanitarian parole applications. Officers must: (1) determine whether humanitarian reasons or a significant public benefit exist, and (2) consider the totality of the circumstances to decide, in its discretion, whether to grant the application. (*Id.* ¶ 47.) As to the first step, the USCIS officer must

determine whether the "beneficiary is at imminent risk of serious harm," considering factors like the beneficiary's living conditions, the availability of other protective measures, and whether the beneficiary can reasonably relocate to another part of their home country.  (*Id.* ¶ 49.)  As to the second step, the officer must consider factors such as the "presence of third-party evidence of imminent risk of serious harm," country conditions, and the beneficiary's vulnerabilities.  (*Id.* ¶ 50.)

Additionally, USCIS policies explain that Requests for Evidence ("RFEs") or Notices of Intent to Deny ("NOIDs") will be issued "when additional evidence could demonstrate eligibility for an immigration benefit." (*Id.* ¶ 51.)  That is, the officer should issue an RFE, not a denial, unless the officer concludes that no additional evidence could cure any deficiencies.  (*Id.* ¶ 52.)

## II.   PROCEDURAL HISTORY

The Taliban movement's return to control of Afghanistan in 2021 increased the severity and imminence of threats to Plaintiff's family.  (*Id.* ¶¶ 5–9.)  In response, Plaintiff filed humanitarian parole applications with USCIS, for each of his twenty-seven family members who remained in Afghanistan.  (*Id.* ¶¶ 4, 13.)  USCIS denied those applications in 2022 through identical form letters.  (*Id.* ¶ 13.)

In 2022, shortly after the USCIS denied the applications, Plaintiff brought this action against then-Secretary of Homeland Security Alejandro Mayorkas, then-Secretary of State Antony Blinken, and then USCIS director Ur Jaddou arguing that USCIS ignored its statutory duty to evaluate parole applications on a "case-by-case basis."  (Sealed Compl.,

Dec. 22, 2022, Docket No. 1.)  Parties thereafter jointly moved to stay the case to work out an administrative solution; Magistrate Judge Dulce F. Foster granted the motion and stayed the case for 120 days.  (Joint Mot. to Stay, Order on Joint Mot. to Stay, Oct. 5, 2023, Docket Nos. 31, 33.)  The Parties requested an additional 90 days, which the Magistrate Judge granted.  (2nd Joint Mot. to Stay, Feb. 2, 2024, Docket No. 36; Order on 2nd Joint Mot. to Stay, Feb. 5, 2024, Docket No. 38.)

During these stays, USCIS reopened Plaintiff's parole applications and issued RFEs for all but one of Plaintiff's family members.  (Am. Compl. ¶¶ 13, 16.)  USCIS again denied all twenty-seven applications with identical form letters.  (*Id.* ¶ 16.)

At an impasse, the parties agreed to resume this litigation.  (Status Report, May 2, 2024, Docket No. 39.)  Plaintiff filed his Amended Complaint, arguing that both the original and subsequent denials violated the APA and the Fifth Amendment of the U.S. Constitution.  (Am. Compl. ¶¶ 90–98.)  All Defendants moved to dismiss for lack of jurisdiction.  (Mots. To Dismiss for Lack of Jurisdiction, July 11, 2024, Docket Nos. 52, 58.)

On March 11, 2025, the Court granted in part and denied in part Defendants' motion to dismiss.  The Court granted the Secretary of State's Motion to Dismiss (Docket No. 58) for lack of standing because Plaintiff failed to plausibly allege that his injury was caused by the Secretary of State.  (Sealed Mem. Op. and Order Denying Mot. Dismiss ("March Order") at 7–8, March 11, 2024, Docket No. 87.)  The Court also granted Defendants USCIS Director and Secretary of Homeland Security's Motion to Dismiss

(Docket No. 52) to the extent the Amended Complaint was based on the first round of USCIS denials, concluding that the APA and Fifth Amendment claims under the first round of denials were moot. (*Id.* at 7.) But the Court denied Defendants USCIS Director and Secretary of Homeland Security's motion in all other respects.

The remaining defendants—the USCIS Director and Secretary of Homeland Security (collectively, "Defendants")—now move for judgment on the pleadings. (Mot. J. on Pleadings, Apr. 18, 2025, Docket No. 95.) Before Defendants filed this motion, Plaintiff voluntarily dismissed the procedural due process claim (Count II), leaving only the APA claim (Count I) remaining. (Stipulation of Dismissal, Apr. 17, 2025, Docket No. 94.)

## DISCUSSION

### I.   STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court analyzes a motion for judgment on the pleadings under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

As such, to survive a motion for judgment on the pleadings, the complaint must contain sufficient factual allegations to state a plausible claim for relief. *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). A district court accepts as true all facts pleaded by the nonmoving party and draws all reasonable inferences from the pleadings in favor of that party. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

-7-

Merely reciting the elements of a cause of action is insufficient, and legal conclusions asserted in the complaint are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion for judgment on the pleadings, a district court refrains from considering matters beyond the pleadings, other than certain public records and "materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (quotation omitted).

## II. ANALYSIS

Defendants argue that (1) the doctrine of consular nonreviewability forecloses review of Plaintiff's remaining APA claim; (2) the Amended Complaint fails to plausibly allege an APA claim; (3) Plaintiff lacks a cause of action to enforce 8 U.S.C. § 1182(d)(5)(A).

### A. The Doctrine of Consular Nonreviewability

"[T]he admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). This principle, known as the doctrine of consular nonreviewability, insulates a consular officer's denial of a visa from judicial review. *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024). However, the doctrine does not apply "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Trump*, 585 U.S. at 703. In such cases, the Court considers whether the executive official provided a "facially legitimate and bona fide reason" for denying the visa. *Id.* If the official has done so, the

-8-

inquiry ends because "the Court has disclaimed the authority to 'look behind the exercise of that discretion,' much less to balance the reason given against the asserted constitutional right." *Muñoz*, 602 U.S. at 908 (quoting *Kerry v. Din*, 576 U.S. 86, 103–04 (2015) (Kennedy, J., concurring in the judgment)). "[T]he doctrine of consular nonreviewability is not jurisdictional." *Id.* at 908 n.4.

In a prior order, the Court determined that the doctrine did not preclude review for two reasons. First, Plaintiff had adequately alleged that his constitutional rights were violated, and therefore, the exception for constitutional claims applied. (March Order at 12.) Second, the Court was not reviewing the ultimate denial of the parole applications but was only "deciding the predicate, nondiscretionary question of whether the twenty-seven denials were made on a case-by-case basis"—which is not subject to the doctrine of consular nonreviewability. (*Id.*)

Because Plaintiff is no longer asserting a constitutional violation, the exception for constitutional claims no longer applies. But the Court's second rationale, however, remains fully applicable. As the Court previously held, the doctrine of consular nonreviewability does not apply when the Court is asked to decide a nondiscretionary predicate legal question: whether USCIS conducted its review on a case-by-case basis.[4]

---

[4] Plaintiff argues that because the Court previously determined that the doctrine of consular nonreviewability did not apply, the law of the case doctrine bars Defendants from relitigating that issue. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," unless the decision was "clearly erroneous and would work a manifest

-9-

(*Id.* at 12.)  Here, as before, the Court is not reviewing the ultimate denial of the parole applications.  It is reviewing only whether those denials were made on a case-by-case basis.  Such a review is not subject to the doctrine of consular nonreviewability.

### B. Count I: APA Claim

The crux of Plaintiff's Amended Complaint is that the form letters denying each parole application demonstrate that USCIS did not conduct a case-by-case review of the applications, which constitutes a violation of the APA.  The Court finds that Plaintiff has met his pleading burden and has sufficiently stated a claim under the APA.[5]

---

injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).  The doctrine only applies "to issues decided by final judgments." *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992) (upholding a district court's reconsideration of its own standing decision and noting that a district court may correct itself "to avoid later reversal" when the court is "convinced that [its earlier holding] is clearly erroneous and would work a manifest injustice.")  Because the Court's prior ruling declining to apply the doctrine of nonreviewability is not a final judgment, the Court is not bound by that decision under the law of the case doctrine.

[5] Defendants attached exhibits to their memorandum supporting the motion to dismiss for lack of jurisdiction and incorporated them by reference in their motion for judgment on the pleadings, including documents relating to USCIS's procedures for adjudicating parole requests generally and for Afghan nationals specifically.  (July 11, 2024, Docket No. 55.)  The Court may properly consider materials that are necessarily embraced by the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).  Such materials include "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)).  Also included are public records that do not contradict the complaint. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (discussing court records).  Here, Defendants extensively cite to (1) government websites, which may be subject to judicial notice and do not contradict the Amended Complaint and (2) the RFEs, which are incorporated by reference in the Complaint.  Although the Court may consider these exhibits, they do not alter the Court's conclusions.

Although the APA does not provide an independent basis for subject matter jurisdiction, "[i]t is black-letter law that federal courts have jurisdiction under [28 U.S.C.] § 1331 over suits against agencies seeking to enforce provisions of the APA." *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1088 (D. Minn. 2008).  The APA provides that an agency acts unlawfully if the action is (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or (2) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A) and (C).

In support of this claim, Plaintiff alleges that the humanitarian parole statute, 8 U.S.C. § 1182(d)(5)(A) requires a "case-by-case" review of parole applications and that USCIS's internal standards explain how such case-by-case review is to be conducted.  (Am. Compl. ¶¶ 12, 45–49.)  Plaintiff argues that USCIS acted contrary to statute by not fully engaging with each application on a "case-by-case basis," as required and acted arbitrarily and capriciously because it did not follow its own procedures.[6]

Plaintiff pleads sufficient factual matter to support his APA claim.  Plaintiff alleges that after USCIS reopened his family members' applications following the filing of this

---

[6] The proposition that agencies must abide by their own policies was first recognized in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  There, the plaintiff was an Italian immigrant who challenged the validity of a Board of Immigration Appeal's decision that denied his deportation appeal.  *Id.* at 262–63.  The Supreme Court reversed and ordered a new appeal hearing because the Board had not acted in accordance with its governing regulations.  The rule that administrative agencies are bound to follow their rules and guidelines is known as the *Accardi* doctrine.

-11-

lawsuit, USCIS issued RFEs for all but one of Plaintiff's twenty-seven family members. (*Id.* ¶¶ 70–72.)  After Plaintiff submitted the requested information, USCIS issued "identical generic denials for all of the applications, including his mother's application for which USCIS did not issue an RFE." (*Id.* ¶ 74.)  The denial consisted of a boilerplate statement that "[w]e carefully reviewed your application in accordance with the law[,] regulation, and USCIS policy and determined that parole is not warranted." (*Id.* ¶ 75.)  The denials made no specific findings and provided no individualized explanation. (*Id.*)  Although the use of boilerplate language does not necessarily establish that USCIS failed to conduct a case-by-case review,[7] the Amended Complaint plausibly alleges that the agency did not consider each application on a case-by-case basis.[8]  Further discovery may illuminate whether Defendants in fact complied with the statutory mandate for case-by-case review.  Accordingly, construing the facts in the light most favorable to the Plaintiff, the Court concludes that the Plaintiff has stated a claim under the APA as to the second round of USCIS parole denials.[9]

---

[7] *Cf. Trump v. Hawaii*, 585 U.S. 667, 686–87 (2018) (acknowledging that the "premise that § 1182(f) not only requires the President to *make* a finding that entry 'would be detrimental to the interests of the United States,' but also to explain that finding with sufficient detail to enable judicial review . . . . is questionable").

[8] This inference is also supported by the allegations that Afghans have been granted parole at much lower rates than applicants from other countries such as Ukraine. (Am. Compl. ¶¶ 81–89.)

[9] The Court acknowledges that the RFEs support an inference that Defendants conducted a case-by-case review, but at the pleading stage, the facts and reasonable inferences must be

### C. Standing

The Immigration and Nationality Act allows the Secretary of Homeland Security to, "in his discretion," parole a person into the United States "for urgent humanitarian reasons or significant public benefit" but "only on a case-by-case basis[.]" 8 U.S.C. § 1182(d)(5)(A). In January 2025, the Laken Riley Act conferred standing on state attorneys general to assert claims against the Secretary of Homeland Security for failing to parole on a "case-by-case basis" if that failure harmed the state. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). In relevant part, the statute provides:

> The attorney general of a State, or other authorized State officer, alleging a violation of the limitation under subparagraph (A) that parole solely be granted on a case-by-case basis and solely for urgent humanitarian reasons or a significant public benefit, that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State . . . to obtain injunctive relief.

8 U.S.C. § 1182(d)(5)(C). Defendants argue that this language bars the Plaintiff from enforcing § 1182(d)(5)(A)'s "case-by-case basis" requirement through this action. In doing so, Defendants distinguish between cases brought on behalf of individual noncitizens regarding the *denial* of parole and suits brought by states regarding the *grants* of parole. Defendants reason that "[i]f Congress wished to authorize suits brought by individuals . . . concerning the *denial* of parole, in addition to suits by States concerning

---

construed in the Plaintiff's favor. Dismissal based on the RFEs is therefore premature and more appropriately addressed at summary judgment.

-13-

*grants* of parole, then it would have done so in § 1182(d)(5)(C)." (Defs.' Mem. in Supp. Mot. J. Pleadings at 37, Apr. 18, 2025, Docket No. 96.)

The Court rejects this line of reasoning and concludes that Plaintiff possesses a private cause of action to enforce § 1182(d)(5)(A)'s "case-by-case basis" requirement. Nothing in the text of § 1182(d)(5)(C) suggests that a case brought by a state attorney general is the **only** way to challenge an agency action under this section. The provision authorizes state attorneys general to sue the Secretary of Homeland Security if parole is not granted on a case-by-case basis—nothing more. Nor does the legislative history suggest that § 1182(d)(5)(C) is the only vehicle by which the agency's action can be challenged. It merely confirms that states may bring actions against the Secretary of Homeland Security, for failing to parole on a "case-by-case basis" if that failure harmed their states' residents.[10]

The Court concludes that the Laken Riley Act, which empowers states to hold the Department of Homeland Security accountable if it paroles individuals without conducting a case-by-case review or relies on reasons other than humanitarian or public

---

[10] *See, e.g.*, 171 Cong. Rec. H277-01, 278, 2025 WL 270227 (Jan. 22, 2025) (statement of Rep. Tom McClintock) (noting that "the bill would also allow States to bring a civil action against derelict Federal officers who refuse to enforce immigration law"); 171 Cong. Rec. H268-01, 268, 2025 WL 270222 (Jan. 22, 2025) (statement of Rep. Austin Scott) (emphasizing that "the bill grants the attorney general of a State the power to hold future administrations accountable by providing standing to bring civil action against Federal officials for the failure to enforce immigration statutes, including mandatory detention, individual parole authority, and visa sanctions").

benefit grounds, does not foreclose a private cause of action. Plaintiff therefore has standing to enforce 8 U.S.C. § 1182(d)(5)(A).

## CONCLUSION

The Court will deny Defendants' Motion for Judgment on the Pleadings. The Court concludes that the doctrine of consular nonreviewability does not foreclose review of the second round of parole denials; that the Amended Complaint plausibly alleges that Defendants failed to evaluate Plaintiff's parole applications on a "case-by-case basis" as required by statute, which is sufficient to state an APA claim; and that 8 U.S.C. § 1182(d)(5)(C) does not bar Plaintiff from maintaining an action to enforce § 1182(d)(5)(A)'s "case-by-case basis" requirement.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings [Docket No. 95] is **DENIED**.

DATED: December 30, 2025　　　　　　　　　　　/s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge